Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 29, 2005      Decided March 3, 2006

No. 05-5168

IN RE: SUBPOENA DUCES TECUM ISSUED TO COMMODITY
FUTURES TRADING COMMISSION

WD ENERGY SERVICES INC.,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 04ms00564)

———

*Julian W. Poon* argued the cause for appellant. With him on the briefs were *David A. Battaglia*, *J. Christopher Jennings*, and *Miguel A. Estrada*. *Douglas F. John* entered an appearance.

*Steven N. Williams* argued the cause for appellee E. & J. Gallo Winery. With him on the brief were *Jon Cuneo* and *David W. Stanley*.

*Michael S. Raab*, Attorney, U.S. Department of Justice, argued the cause for federal appellee. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, *Kenneth L.*

*Wainstein*, U.S. Attorney, *Catherine Y. Hancock*, Attorney, *Kirk T. Manhardt*, Deputy General Counsel, Commodity Futures Trading Commission, *Glynn L. Mays*, Senior Assistant General Counsel, and *Gloria P. Clement*, Assistant General Counsel. *Thuy T. Dinh*, Attorney, entered an appearance.

Before: ROGERS, TATEL and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This is an appeal of a discovery order. In April 2003, E. & J. Gallo Winery sued WD Energy Services, Inc. (f/k/a EnCana Energy Services, Inc.) in the Eastern District of California during the pendency of an investigation by the Commodity Futures Trading Commission of the California natural gas market. Gallo alleged that WD Energy (and other energy companies) had unlawfully manipulated the California energy market in violation of state and federal laws. During discovery, Gallo sought documents from WD Energy with respect to the Commission's investigation and settlement with WD Energy. WD Energy produced many of the subpoenaed documents, but withheld documents that it characterized as relating to the settlement with the Commission. When Gallo moved to compel compliance with its subpoena, a Magistrate Judge ruled that the withheld documents were protected by a federal settlement privilege under FED. R. EVID. 501.

Gallo also served on the Commission a third party judicial subpoena from the district court for the District of Columbia to produce the WD Energy documents in its possession. The Commission indicated it would interpose no governmental privilege in responding to the subpoena. However, WD Energy filed objections to the subpoena, arguing that Gallo was collaterally estopped by the Magistrate's ruling on the

settlement privilege and, alternatively, that many of the documents were protected by a federal settlement privilege under FED. R. EVID. 501. The district court rejected WD Energy's collateral estoppel arguments, ruled that no federal settlement privilege existed under FED. R. EVID. 501, and granted Gallo's motion to compel the Commission's compliance with the subpoena. *See In re Subpoena Issued to CFTC*, 370 F. Supp. 2d 201, 207 & n.7, 212 (D.D.C. 2005) ("*Subpoena*"). WD Energy appeals.

Upon *de novo* review, we hold that the Magistrate's privilege ruling was not entitled to preclusive effect under the principle of collateral estoppel. In arguing that collateral estoppel applied to the Magistrate's ruling, WD Energy failed to meet its burden to show that the same documents were at issue in both fora; in addition, the Magistrate's ruling contains a potential ambiguity regarding whether the privilege issue was actually decided. WD Energy's contention based upon the doctrine of law of the case lacks merit because the third-party subpoena enforcement proceeding was a new proceeding in a different court. We do not reach the question whether a federal settlement privilege exists under FED. R. EVID. 501. WD Energy failed to meet its burden of demonstrating that the disputed subpoenaed documents were created for the purpose of settlement discussions and therefore would merit protection under any federal settlement privilege that the court might recognize. Accordingly, we affirm the grant of the motion to compel the Commission's compliance with Gallo's subpoena without reaching the merits of the district court's ruling that no settlement privilege exists under FED. R. EVID. 501.

## I.

Orders compelling production of allegedly privileged information satisfy the three criteria for collateral review under

4

*Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). *In re Sealed Case (Med. Records)*, 381 F.3d 1205, 1209 (D.C. Cir. 2004). Under doctrine deriving from *Perlman v. United States*, 247 U.S. 7 (1918), a discovery order directed at a disinterested third party is treated as an immediately appealable final order because the third party generally lacks a sufficient stake in the proceeding to risk contempt by refusing compliance. *See Church of Scientology of Cal. v. United States,* 506 U.S. 9, 18 n. 11 (1992). In reviewing a discovery order directed at a third party, our review is for abuse of discretion. *See In re Sealed Case*, 121 F.3d 729, 740 (D.C. Cir. 1997). "Because a 'district court by definition abuses its discretion when it makes an error of law,' the 'abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.'" *In re Sealed Case (Med. Records)*, 381 F.3d at 1211 (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)); *see also Tuite v. Henry*, 98 F.3d 1411, 1415 (D.C. Cir. 1996). Legal conclusions are reviewed *de novo.* *See In re Sealed Case*, 146 F.3d 881, 883 (D.C. Cir. 1998); *In re Subpoena Served upon the Comptroller of the Currency*, 967 F.2d 630, 633 (D.C. Cir. 1992).

Although WD Energy has failed to obtain a stay of the district court's order pending appeal, and the Commission has now produced the documents to Gallo, WD Energy's appeal is not moot. In *Church of Scientology,* 506 U.S. at 13, the Supreme Court held that a court's ability to offer a partial remedy, such as ordering the return or destruction of disputed materials, is sufficient to prevent mootness. WD Energy seeks the return of its documents to the Commission and the destruction of all work product stemming from Gallo's examination of the documents. *Cf. FTC v. Compagnie De Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300, 1327 (D.C. Cir. 1980). Thus, notwithstanding the Commission's compliance with Gallo's subpoena, the court can provide a meaningful

remedy. *See Church of Scientology*, 506 U.S. at 12-13.

## II.

WD Energy contends that the district court erred by not applying collateral estoppel to the Magistrate's order because all of the standards for establishing the preclusive effect of a prior judgment have been satisfied. It relies on *Yamaha Corp. of America v. United States*, 961 F.2d 245 (D.C. Cir. 1992), where the court set forth the three conditions that must be satisfied in order to bind a party to a prior determination of a legal or factual issue:

> First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case. Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

*Id*. at 254 (citations omitted); *see, e.g., Jack Faucett Assocs., Inc. v. Am. Tel. and Tel. Co.*, 744 F.2d 118, 125 (D.C. Cir. 1984); *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983). As the party invoking collateral estoppel, WD Energy bears the burden of establishing that the conditions for its application have been satisfied. *See Democratic Cent. Comm. of D.C. v. Washington Metro. Area Transit Auth*., 842 F.2d 402, 409 (D.C. Cir. 1988); *see also Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971).

### A.

The background to WD Energy's collateral estoppel claim begins in 2002, when the Commission opened an investigation into the manipulation of California natural gas markets by a

number of energy companies, including WD Energy, for violation of the Commodity Exchange Act, 7 U.S.C. §§ 9, 13b, 13(a)(2), 15 (2000). In June 2002, the Commission informed WD Energy that it was a subject of this investigation. WD Energy produced a large number of documents in response to a Commission subpoena of January 24, 2003 and the Commission's subsequent requests for information. WD Energy requested, pursuant to a Commission regulation, 17 C.F.R. § 145.9 (2003), that the documents it was submitting be treated as confidential under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000), which affords protection for certain privileged documents, *see id.* § 552(b)(4). On July 28, 2003, the Commission entered into a settlement agreement under which WD Energy paid $20 million as a civil penalty. *See In the matter of WD Energy Services, Inc.*, Commission Docket No. 03-02, Comm. F. L. Rep. (CCH) ¶ 29,544, 2003 WL 21742069, at * 4 (July 28, 2003).

Following the settlement, the Commission notified WD Energy of FOIA requests lodged by parties contemplating suits against a number of energy companies for documents related to the Commission's investigation of California's natural gas market. The Commission asked WD Energy to provide a "detailed written justification" of its previous requests for confidential FOIA treatment. By letter of January 5, 2004, WD Energy listed the categories of documents it deemed to be privileged, including those it categorized as "settlement communications" and "voluntarily-created and produced material." The Commission agreed, by letter of February 6, 2004, that WD Energy's "requests for confidential treatment" under FOIA, contingent upon the requester's right to appeal, "should be granted in full."

While WD Energy was under investigation by the Commission, Gallo, a large California consumer of natural gas, sued WD Energy in the Eastern District of California on April

9, 2003. Gallo subsequently requested discovery of any documents in WD Energy's possession that supported the factual findings in the Commission's July 28, 2003 settlement order. WD Energy produced thousands of pages of documents and many hours of audio recordings in response to Gallo's discovery requests; however, WD Energy resisted disclosing many of the documents it had provided to the Commission on the grounds of various privileges. WD Energy filed a lengthy privilege log, and, after briefing and argument, a Magistrate Judge resolved the discovery disputes.

The Magistrate denied in part Gallo's motion to compel production of documents that WD Energy had claimed were privileged, ruling that FED. R. EVID. 501 provided a federal "settlement privilege" that protected documents created by WD Energy subsequent to the Commission's investigation whose "tenor . . . was to settle [the Commission's] claims." Order on Plaintiff's Further Discovery Motions (Docs. 303-305, 306), *E. & J. Gallo Winery v. Encana Energy Servs., Inc.*, No. 03-5412, at 7 (E.D. Cal. Jan. 28, 2004) ("Magistrate's Order"). The Magistrate cited decisions in the Eastern and Central districts of California and the Sixth Circuit's decision in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 979 (6th Cir. 2003), holding that a federal settlement privilege existed under FED. R. EVID. 501. In his concluding paragraph on the settlement privilege, the Magistrate stated:

> Disclosure of the [Commission] documents would likely chill discussions and thwart tribunal efficiencies and public interests noted above. The [Commission] documents likely would be used to cross examine [WD Energy] under the ruse of impeachment evidence to eviscerate privacy expectations. [WD Energy has] produced documents provided to [the Commission] and existing prior to [the Commission's] investigation. Moreover, the pending D.C. court action militates

against overriding [WD Energy's] assertion of the settlement privilege.

Magistrate's Order at 7. Subsequently, the Magistrate stated in a letter of February 23, 2005, in response to Gallo's letter requesting clarification, that he was not deferring to the D.C. district court but "[b]ased on WD Energy's representations that it created and provided to [the Commission] certain documents to reach settlement," he had "recognized and applied the settlement privilege to such documents." On March 7, 2005, Gallo moved in the district court for reconsideration of the Magistrate's Order, as clarified by his February 23, 2005 letter.

While this discovery dispute was being litigated in California, Gallo served on the Commission a third party judicial subpoena from the district court of the District of Columbia, directing the Commission to produce the documents it had received from WD Energy (and other energy companies) during its investigation of companies involved in the California natural gas market. Gallo filed a motion to compel the Commission's compliance with the subpoena. WD Energy filed a response, arguing in part that "[m]any of the documents that Gallo is seeking . . . are documents that WD [Energy] prepared during the course of the [Commission's investigation] and provided to the [Commission] in order to facilitate settlement." WD Energy Services, Inc., Objections and Opposition to Subpoena Issued by E. & J. Gallo Winery to U.S. Commodity Futures Trading Commission of Dec. 16, 2004 at 10-11. The Commission responded that it would not assert any governmental privileges against compliance and would defer taking a position on the settlement privilege until WD Energy had identified the documents and transactions it considered protected by the settlement privilege. WD Energy subsequently filed an affidavit of counsel in support of its privilege claim, attaching the February 6, 2004 letter from the Commission.

9

The D.C. district court held a hearing on Gallo's motion to compel on March 11, 2005. Both Gallo and the Commission challenged whether any of the documents sought under the subpoena would be covered by a settlement privilege. According to the Commission, no documents that remained subject to the subpoena were created by WD Energy in order to settle the Commission's enforcement action or as a result of settlement discussions, but were instead produced in response to the Commission's investigatory demands. WD Energy responded that Gallo was collaterally estopped by the Magistrate's Order from enforcing its subpoena, and that the Commission had been made aware by WD Energy's January 5, 2004 FOIA letter of the documents WD Energy claimed were privileged. Gallo also argued that the Magistrate's Order was not a final order.

On April 28, 2005, the district court granted Gallo's motion to compel, ruling that no estoppel attached to the Magistrate's Order and that there was no federal settlement privilege under FED. R. EVID. 501. *See Subpoena*, 370 F. Supp. 2d at 207 & n.7, 212. A week later, the district court in the Eastern District of California, presuming that the Commission had turned over the withheld documents to Gallo in accord with the D.C. district court's order of April 28th, denied Gallo's motion for reconsideration of the Magistrate's Order as moot, and further ruled, even if the issue was not moot, that Gallo's motion for reconsideration was untimely under FED. R. CIV. P. 72(a) and E.D. Cal. Local Rule 72-303(b). *See E. & J. Gallo Winery v. Encana Energy Servs., Inc.*, No. 03-5412, slip op. at 6 (E.D. Cal. May 4, 2005).

**B.**

Neither Gallo nor the Commission challenges WD Energy's right to raise collateral estoppel as a ground to quash or modify a subpoena under FED. R. CIV. P. 45(c)(3)(A)(iii). Although we have found no authority that authorizes a third party to a

subpoena to advance an estoppel claim, this is a reasonable extension of the settled practice of allowing a party not named in a subpoena to challenge the subpoena in ancillary proceedings in the district court and on appeal under the *Perlman* doctrine. *See Perlman*, 247 U.S. at 13; *In re Sealed Case (Med. Records)*, 381 F.3d at 1210-11. Such an extension also comports with our precedent. For instance, in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), the court held that a third party may attempt to maintain the confidentiality of materials that are under the control of a court by initiating an ancillary proceeding without intervening in the underlying litigation. *Id.* at 310-11. The court noted a variety of circumstances in which third parties may participate in proceedings in order to protect their interests. *See id.* at 313 n. 67; *see also In re Sealed Case*, 237 F.3d 657, 663-64 (D.C. Cir. 2001); *United States v. AT&T*, 642 F.2d 1285, 1292 (D.C. Cir. 1980); *Gravel v. United States*, 408 U.S. 606, 608 n.1 (1972); *cf. United States v. RMI Co.*, 599 F.2d 1183, 1186 (3d Cir. 1979). This is consistent with the dual purposes behind collateral estoppel, namely, to "protect[] litigants from the burden of relitigating an identical issue with the same party or his privy and . . . [to] promot[e] judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979).

In rejecting WD Energy's collateral estoppel argument, the district court focused on the fact that the Commission, as the holder of the documents and a participant in the settlement discussions underlying WD Energy's settlement privilege claim, had a significant interest but, because it was not a party to the California proceedings, never had an opportunity to be heard on the settlement privilege issue. *See Subpoena*, 370 F. Supp. 2d at 206. Because Gallo is the party potentially precluded from relitigating the issue of the settlement privilege and its applicability to the withheld documents, we need not address the significance of the Commission's absence from the California proceedings. Additionally, like the district court, which

considered but did not decide whether the Magistrate's Order was a final order in light of the implication that, under the Federal Magistrates Act, 28 U.S.C. §§ 636(b)(1)(A) or (B) (2000), a Magistrate's determination only becomes final once the district court makes it final, *see Subpoena*, 370 F. Supp. 2d at 205-06 (citing, *e.g., J.R. Stripling v. Jordan Prod. Co.,* 234 F.3d 863, 868 (5th Cir. 2000)), we need not decide whether the Magistrate's Order is final for estoppel purposes. *Cf.* Restatement (Second) of Judgments § 13. Assuming finality, WD Energy has failed to meet its burden to establish that the three conditions for collateral estoppel have been satisfied. *See Yamaha*, 961 F.2d at 254.

First, it is unclear whether the same issues were presented in both the California and the District of Columbia proceedings. The question before the D.C. district court was the applicability of a settlement privilege to specific documents. WD Energy asserted the same settlement privilege in both fora, and Gallo's California lawsuit is the underlying basis of WD Energy's litigation in the D.C. district court. Nevertheless, it is not clear that the same documents are being contested here as in the Eastern District of California. The Magistrate's Order specifies which documents were protected by the settlement privilege only by general reference to WD Energy's privilege log and suggests that the Magistrate did not, in order to determine whether the privilege would apply to particular documents, personally examine the withheld documents or hear testimony about the circumstances surrounding their creation and use. The Magistrate's Order refers only to the "tenor" of the documents based on WD Energy's representations that the only withheld documents were both related to facilitating settlement with the Commission and created after the Commission "commenced its investigation." Magistrate's Order at 5.

Inasmuch as the Magistrate's Order was designed to settle a large number of discovery disputes between the parties, and

the Magistrate noted some deficiencies in WD Energy's privilege log that made it difficult to determine in all instances which documents were claimed as privileged, it appears that the Magistrate contemplated the possibility of subsequent proceedings to define the circumstances surrounding the creation of the documents and their role in the settlement discussions; then, either Gallo could contest the applicability of the settlement privilege on a document-by-document basis or the Magistrate could conduct an *in camera* review. So far as the record before this court indicates, this had not happened before the D.C. district court granted Gallo's motion to compel the Commission to comply with Gallo's subpoena. In any event, neither the D.C. district court nor the district court in the Eastern District of California appear to have examined the withheld documents or the privilege log. Thus, WD Energy has been unable to show that the specific documents Gallo seeks in the D.C. district court already have been determined to be privileged by the Magistrate.

This court is not in a position to determine with confidence that the withheld documents ruled by the Magistrate to be protected by a federal settlement privilege are the same documents WD Energy sought to have withheld in the D.C. district court proceedings. The district court noted that before the Magistrate, WD Energy had asserted that the privilege applied to a larger set of documents. *See Subpoena*, 370 F. Supp. 2d at 205 n.2. WD Energy, through the proffer at the March 11, 2005 hearing of an excerpt from its January 5, 2004 FOIA letter to the Commission, attempted to define the scope of its assertion of the settlement privilege to protect only eight sets of subpoenaed documents. However, through this proffer, WD Energy also made clear that it was claiming a privilege for documents it submitted to the Commission between February and May of 2003. This was after the Commission's subpoena of January 24, 2003 but was, according to the Commission's statement to the D.C. district court at the hearing that the

13

Commission was not engaging in settlement discussions but was conducting an investigation during this time, apparently before any explicit discussions in which the Commission indicated its willingness to address the terms of a settlement with WD Energy. The Magistrate's Order does not address whether documents filed with the Commission before the commencement of discussions over the terms of settlement were included within the scope of its ruling that settlement documents were protected by a federal settlement privilege. The affidavit of WD Energy's counsel, while stating that "certain [post-January 2003 created] materials were prepared for the sole purpose of facilitating and furthering settlement," Affidavit of Douglas F. John, Feb. 25, 2005 at 1-2, does not identify those documents individually or as being the eight sets of documents later identified for the district court at the March 11, 2005 hearing; nor does it identify the dates of the settlement discussions. The Magistrate's Order, in turn, does not tie the settlement privilege to specifically identified documents or to specific settlement discussions. Hence, nothing on the record before this court shows with a reasonable degree of certainty that the privilege found by the Magistrate reached the eight sets of documents at issue in the D.C. district court.

The uncertainty about the relationship between the documents in the two fora is highlighted by the Commission's assertion in the D.C. district court that, upon reviewing the WD Energy documents in its possession, the Commission was unclear whether any of the remaining subpoenaed documents would be covered by a settlement privilege. The Commission further observed that because no judicial officer had identified the withheld documents, were the D.C. district court to accord preclusive effect to the Magistrate's Order, the Commission might have to go to California in order to determine which documents were covered by the settlement privilege. By failing to timely make a record in the D.C. district court that unambiguously indicated that the same "settlement" documents

were at issue in both fora, WD Energy failed to meet its burden to show that the same issue was presented in the California proceedings.

Second, there is a potential ambiguity in the Magistrate's Order about whether the question of privilege was actually and necessarily determined. *See NextWave Pers. Commc'ns, Inc. v. FCC*, 254 F.3d 130, 147 (D.C. Cir. 2001). The Magistrate concluded his analysis of the federal settlement privilege by observing, "Moreover, the pending D.C. court action militates against overriding [WD Energy's assertion] of the settlement privilege." Magistrate's Order at 7. On the one hand, the Magistrate may have meant that it was prudent to recognize that a settlement privilege covered the withheld WD Energy documents in order to prevent Gallo from obtaining them from the Commission in the D.C. district court proceeding. On the other hand, he may have meant that he was electing to defer a decision pending the outcome of the D.C. district court proceeding as WD Energy had requested. *See id.* at 3. To the extent that the sentence may plausibly be read to suggest this latter interpretation, the equivocal nature of the "militates" sentence would suggest that the California proceedings did not necessarily determine the settlement privilege issue. Although the Magistrate clarified his intent in a February 23, 2005 letter responding to Gallo's ex parte letter inquiry, no letter could alter the Magistrate's Order itself, and because the district court in the Eastern District of California issued its opinion after the D.C. district court opinion now on review, its denial of Gallo's motion for reconsideration has no bearing on whether the Magistrate's Order actually and necessarily determined the issue of privilege with respect to the documents.

The Supreme Court has observed: "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 481

(1982) (quoting *Montana v. United States*, 440 U.S. 147, 164, n.11 (1979)). There is reason here. WD Energy has failed to build a record in the D.C. district court that links the eight sets of documents listed in the proffered excerpt of its January 5, 2004 FOIA Letter to the Commission with the documents listed in its privilege log before the Magistrate Judge as subject to a settlement privilege. Without such linkage, it is impossible to know what specific documents the Magistrate concluded were privileged; the cases cited in the Magistrate's Order involved different factual situations and hence cannot resolve the uncertainty, particularly as there are no findings by either the Magistrate or a district court on the settlement discussions that would be covered by a federal settlement privilege. The fact that the Commission informed the D.C. district court that the WD Energy documents in its possession were created in response to the Commission's investigation and not in connection with settlement discussions simply underscores the uncertainty about whether the same issue was presented in both fora, which alone would preclude according collateral estoppel effect to the Magistrate's Order. *See Yamaha*, 961 F.2d at 254.

Therefore, we hold that the district court did not err in refusing to give preclusive effect to the Magistrate's ruling on the settlement privilege.

### III.

WD Energy also contends that the doctrine of law of the case called for deferring to the Magistrate's determination that the withheld documents were protected by a federal settlement privilege "in these coordinated proceedings" to compel the Commission to produce the same documents. Its contention is meritless. Law of the case doctrine applies within the same case, proceeding, or action. *See generally Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739-40 (D.C. Cir. 1995); 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,

Fed. Prac. & Proc. Juris. 2d § 4478 (2002). Gallo's lawsuit against WD Energy in the Eastern District of California has not been transferred to the district court in the District of Columbia. "[A] subpoena enforcement action is technically a different 'case,'" *In re Subpoena Duces Tecum Served on Office of Comptroller of the Currency*, 145 F.3d 1422, 1425 (D.C. Cir. 1998) (dictum), as both the Magistrate and the district court in the Eastern District of California recognized. The cases on which WD Energy relies, such as *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 815-16 (1988), involve the transfer of proceedings between courts, not the commencement of a new, albeit ancillary, proceeding in a different court.

## IV.

FED. R. EVID. 501 provides, in relevant part:

> the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

The rule's invocation of "reason and experience" was drawn from *Wolfle v. United States*, 291 U.S. 7, 12 (1934); *see also Hawkins v. United States,* 358 U.S. 74, 79 (1958), and, as the Supreme Court observed in *Trammel v. United States*, 445 U.S. 40 (1980), "acknowledge[s] the authority of the federal courts to continue the evolutionary development" of privileges as matters of federal common law. Looking at the history of the rule, the Court in *Trammel* explained that:

> The general mandate of [FED. R. EVID. 501] was substituted by the Congress for a set of privilege rules drafted by the Judicial Conference Advisory

Committee on Rules of Evidence and approved by the Judicial Conference of the United States and by this Court. That proposal defined nine specific privileges, including a husband-wife privilege . . . and eliminated the privilege for confidential marital communications. In rejecting the proposed Rules and enacting [FED. R. EVID. 501], Congress manifested an affirmative intention not to freeze the law of privilege. Its purpose rather was to 'provide the courts with the flexibility to develop rules of privilege on a case-by-case basis,' 120 Cong. Rec. 40891 (1974) (statement of Rep. Hungate), and to leave the door open to change.

*Id.* at 47-48 (citations omitted). The Supreme Court in *Jaffee v. Redmond*, 518 U.S. 1, 10-15 (1996), has provided guidance for lower courts in determining whether to establish a new privilege under FED. R. EVID. 501, instructing that courts consider whether the privilege is "rooted in the imperative need for confidence and trust," 518 U.S. at 10 (internal quotation marks omitted), whether the privilege would "serve public ends," *id*. at 11 (internal quotation marks and alteration omitted), what evidentiary benefit would arise from denying the privilege, *id*. at 11-12, and the States' rules on the subject, *id*. at 12-15.

It is to the federal courts' authority under FED. R. EVID. 501 that WD Energy looks for the establishment of a federal settlement privilege to cover the documents it claims were prepared for the purposes of facilitating settlement of a pending enforcement action brought by the Commission. WD Energy contends that the district court, by failing to recognize that the Sixth Circuit's decision in *Goodyear Tire & Rubber,* 332 F.3d 976*,* was based on a proper application of the *Jaffee* criteria for recognizing a federal privilege under FED. R. EVID. 501, compounded its errors by holding that federal law does not recognize the existence of any privilege protecting settlement communications between parties to prospective or actual

litigation.

This case does not present the occasion to examine whether federal common law provides a settlement privilege. It is well established that the proponent of a privilege bears the burden of demonstrating facts sufficient to establish the privilege's applicability. *See, e.g., United States v. Legal Servs. for N.Y. City*, 249 F.3d 1077, 1081 (D.C. Cir. 2001); *In re Sealed Case*, 148 F.3d 1073, 1076 (D.C. Cir. 1998); *see also Schreiber v. Soc'y for Sav. Bancorp, Inc.*, 11 F.3d 217, 220 (D.C. Cir. 1993). This entails a threshold burden to show entitlement to a ruling on the existence of a privilege. "A claim of privilege must be presented to a district court with appropriate deliberation and precision before a court can rule on the issue, and the fact that [a] claim arose in the context of a subpoena enforcement proceeding, rather than routine civil litigation, does not alter this requirement." *SEC v. Lavin*, 111 F.3d 921, 928 (D.C. Cir. 1997) (citations and internal quotations omitted); *see Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1342 (D.C. Cir. 1984). The "basis of [a] privilege" must be "adequately established in the record," *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287, 1303 (D.C. Cir. 1988), through evidence "sufficient . . . to establish the privilege . . . with reasonable certainty," *FTC v. TWR, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980).

Although Federal Rule of Civil Procedure 45(d)(2) does not speak directly to the burden on third parties raising claims of privilege under the *Perlman* doctrine, the applicability of a similar burden is natural. Rule 45(d)(2) is generally satisfied by the submission of a privilege log detailing each document withheld and the reason. *See Tuite*, 98 F.3d at 1416. For example, had the Commission objected to Gallo's subpoena on the basis of a privilege, the Commission would have been required to state such claims "expressly" and with a "description of the nature of the documents, communications,

or things not produced that is sufficient to enable the demanding party to contest the claim." FED. R. CIV. P. 45(d)(2); *see Tuite*, 98 F.3d at 1416. Rule 45(d)(2) serves two purposes, both of which are relevant in ancillary actions under *Perlman* and acquire special moment when a court is faced with the challenge of applying *Jaffee* to assertions of historically novel privileges. First, it prevents courts from addressing often difficult questions in the abstract. *See In re Sealed Case*, 856 F.2d at 271 (D.C. Cir. 1988). Second, timely and detailed explanation of the grounds of the privilege protects the subpoenaing party's right to contest the claims of privilege. *See Tuite*, 98 F.3d at 1416.

In light of the admonitions from the Supreme Court and this court that courts proceed cautiously in deciding whether novel privileges exist under federal common law, *see Univ. of Penn. v. EEOC*, 493 U.S. 182, 194 (1990); *United States v. Nixon*, 418 U.S. 683, 710 (1974); *In re Sealed Case*, 148 F.3d at 1075-77, the court must ensure that WD Energy has identified with particularity the documents claimed as privileged and the basis for this claim, much as WD Energy may have done in the Eastern District of California by filing a privilege log and affidavits regarding the settlement discussions, before determining whether such a privilege exists. *See Friedman*, 738 F.2d at 1342-43. Both the plain text of FED. R. EVID. 501, which calls on federal courts to "interpret" the "principles of the common law . . . in the light of reason and experience," and the standards articulated by the Supreme Court in *Jaffee* and *Trammel*, suggest that a court's inquiry must be informed by a nuanced appreciation of the relevant factual context. As generally understood, the "evolutionary" development of the common law is a product of intensely fact-sensitive judicial responses to particular and not abstract disputes. As then-Judge Benjamin Cardozo succinctly observed: "The common law . . . . method is inductive, and it draws its generalizations from particulars." *The Nature of the Judicial Process* 22-23 (1921). Where the proponent of a

privilege does not identify the particular documents at issue and the particular contextual basis for claiming a privilege, thereby affording a challenger an opportunity to set forth its position, a court will be hamstrung when it undertakes the requisite analysis. *See Jaffee*, 518 U.S. at 10-15; *In re Sealed Case*, 148 F.3d at 1076-77. Where detailed description of the contested documents would undermine the claimed privilege, the proponent's burden to describe with particularity can be met in other ways, such as *in camera* review by the court. *See, e.g.*, *Judicial Watch*, 432 F.3d at 370.

The district court asked the pertinent questions during the March 11, 2005 hearing on Gallo's motion to compel but received only incomplete responses. First, the district court sought to clarify which documents were at issue. Gallo and the Commission, after reviewing the WD Energy documents in its possession, had asserted in their pleadings that WD Energy had failed to carry its burden of building a record that could demonstrate that any of the subpoenaed documents were privileged. At the hearing Gallo argued that "it was incumbent upon WD [Energy] . . . to specifically tell this [c]ourt with a great deal of accuracy" which subpoenaed documents were claimed as privileged. Transcript of March 11, 2005 at 7-8. When the district court expressed concern that the Commission may possess documents very clearly in the nature of settlement proposals, Gallo responded, "If there are, WD [Energy] hasn't told us what they are, and it was their duty to do so . . . ." *Id*. at 10.

WD Energy, for its part, conceded that it bore the burden of providing a "very specific description" of the documents it claimed were privileged: "it's clearly necessary for us to do that." *Id*. at 59-60. At the hearing, WD Energy told the district court that in responding to the FOIA requests following its settlement with the Commission, it had "advised the [Commission] of exactly the documents that [WD Energy]

sought to protect because they were created and provided to the [Commission] for the purpose of facilitating a settlement . . . ." *Id*. at 58. The affidavit of its counsel had declared that "certain of these materials were prepared for the sole purpose of facilitating and furthering settlement with the [Commission]," that "[a]ll of these materials were voluntarily provided to the [Commission] and [that] they were provided with an expectation that the information would remain confidential and would not be used against WD [Energy] in subsequent litigation . . . ." Affidavit of Douglas F. John of Feb. 25, 2005 at 2. Attached to the affidavit was a copy of the Commission's February 6, 2004 letter stating that WD Energy's request for confidential treatment of its submitted documents under FOIA "should be granted in full." The district court noted that various other affidavits submitted by WD Energy "discuss in general the kinds of documents and in general the kinds of harm." Transcript of March 11, 2005 at 20. At the hearing, WD Energy also produced, for the first time in the D.C. district court proceeding, an excerpt from its January 5, 2004 FOIA letter to support its assertion of confidential treatment. *Id*. at 60. This one-page excerpt contained WD Energy's listing of sets of documents it claimed (and the Commission had agreed) merited confidential treatment under FOIA. Absent evidence of the circumstances surrounding the creation of the documents and their role in settlement discussions, however, identification of the documents was an incomplete response to the district court's inquiry.

Second, the district court asked why WD Energy had previously provided only generalized descriptions of these documents. WD Energy explained its refusal to "publicly disclose" this list or to provide a "very specific description of what we had provided or created for the [Commission]," *id*. at 59, on the ground that a more specific assertion would have vitiated the privilege, *see id*. WD Energy explained that its business records were already in Gallo's possession while the

contested documents were created to help the Commission understand those business records. If this were the case, then it behooved WD Energy to proffer the documents or a specific description of them in a privilege log for *in camera* inspection by the court.

Third, the district court sought an explanation of how it should relate the categories of documents identified in the excerpt of the January 5, 2004 FOIA letter to the timeline of the Commission investigation. According to Gallo, WD Energy had not shown there was a mutual understanding between WD Energy and the Commission that the documents would be produced to settle a potential claim in a civil action; rather, Gallo asserted, WD Energy was relying upon its "supposed subjective intent at the time [it] provided [documents] rather than on facts demonstrating that [there] were, in fact, settlement discussions going on and [that] specific documents . . . were created pursuant to settlement discussions." *Id*. at 14-15. The district court noted, based on the Commission's position that prior to July 2003 it was prepared to move forward with an enforcement action, that seven of the sets of documents listed on the excerpt from the 2004 FOIA letter appeared to predate July 2003. (The only remaining subpoenaed set of listed documents was dated July 11, 2003.) "How," asked the district court, "am I . . . to ascertain whether something created on March 7, 2003, which is a series of spreadsheets[,] is actually a settlement document as opposed to just some information that is being submitted to the investigating agency in an attempt either to cooperate in the investigation or to talk the agency out of taking any enforcement action?" *Id.* at 62. WD Energy responded that these documents were distinguished from the many other documents WD Energy had provided to the Commission because they did not exist on January 24, 2003, when WD Energy had received the Commission's subpoena, "were all stamped privileged and confidential," *id*. at 64, and "belie the efforts of somebody intending to litigate a case * * *

[because] they were concessions. They were quid pro quo," *id*. Even so, in order to respond to the district court's inquiry, WD Energy needed to identify the type of information that would appear on the March 7, 2003 spreadsheets that would indicate that WD Energy submitted these documents to the Commission to facilitate settlement. Again, WD Energy needed to provide the district court with detailed information about the role of the documents in particular settlement discussions.

Only WD Energy's proffer of the excerpt of the 2004 FOIA letter even arguably answered the district court's questions about which documents WD Energy claimed would be protected by a federal settlement privilege. The Commission argued that this proffer was "too little, too late." *Id*. at 144. Even with the excerpt, the district court was unaware of the specific connection between the listed documents and the Commission's investigation, which was the basis for claiming a settlement privilege. Although the district court, after examining the excerpt, better understood in what respect WD Energy had been claiming a privilege over only a "small group" of documents, the eleventh hour proffer deprived the district court of responsive pleadings by Gallo and the Commission, which could have shed additional light on whether these documents had been prepared for use in settlement discussions or in response to the administrative subpoena and other Commission requests before any settlement discussions began. Further, while WD Energy's argument that the listed documents could be distinguished from others it had provided the Commission because they were concessions, WD Energy did not explain away the Commission's contrary view of events prior to July 2003.

Moreover, by its own terms, WD Energy's January 5, 2004 FOIA letter did not address privileges under the federal rules but confidentiality for purposes of FOIA. The Commission's acceptance of WD Energy's confidentiality claims did not

confer upon these documents a privilege from discovery. FOIA's exceptions to disclosure limit only the right to information conveyed pursuant to that statute, *see* 5 U.S.C. § 552(d), and other limitations on the Commission's authority to publish information, such as 7 U.S.C. § 12(a)(1), do not alter the Commission's duty to comply with lawful subpoenas after notice to the party whose information is sought, *see id.* § 12(f); *Friedman*, 738 F.2d at 1344; 17 C.F.R. § 11.4 (2005).

Unlike the district court in *Goodyear Tire & Rubber*, 332 F.3d at 978-80, the D.C. district court had not itself presided over the settlement discussions. Neither had the proceedings in the Eastern District of California been transferred to the D.C. district court. Hence, under "the well-established sequence of burdens of going forward," *Friedman*, 738 F.2d at 1343, WD Energy had the burden to build a record containing specific information about the disputed documents and the factual context for the privilege claim, including information about when settlement discussions began, what representations were made by those involved, and what documents were created or submitted to the Commission to facilitate those discussions. Only then would the district court be in a position to evaluate WD Energy's claim that the listed sets of documents would be protected from disclosure by a federal settlement privilege under FED. R. EVID. 501.

WD Energy did not file a privilege log here, and thus the record before the D.C. district court consisted of WD Energy's general characterizations of the disputed documents and settlement discussions, a belated description of the specific sets of documents, and contentions by Gallo and the Commission that the documents generally and specifically described by WD Energy would not be covered by a settlement privilege. There were no factual findings regarding settlement discussions made in the proceedings in the Eastern District of California that could fill these gaps and potentially lessen WD Energy's burden

in the D.C. district court.  Without such information, the district court lacked a sufficient factual context within which to evaluate whether withholding the listed eight sets of documents advanced important public interests, satisfied the justified expectations of the parties, or would have been treated as privileged under various State laws — each of which can be an important consideration under *Jaffee* and other relevant caselaw.  *See, e.g.*, *In re Sealed Case*, 148 F.3d at 1075-77; *Goodyear Tire & Rubber*, 332 F.3d at 980-81.  Under the circumstances, there was an inadequate record upon which the district court could assess the merits of a novel privilege claim in this circuit and in all but one other circuit court of appeals.  Consequently, a decision by this court on the merits of the federal settlement privilege claim would likewise be premature.  *See Friedman*, 738 F.2d at 1343.

Accordingly, we affirm the discovery order granting Gallo's motion to compel production by the Commission.  The Magistrate's Order was not entitled to preclusive effect under the principle of collateral estoppel, and the law of the case contention lacks merit.  We do not address the merits of WD Energy's settlement privilege claim; rather, we affirm on the alternative ground, *see Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1281 (D.C. Cir. 2005), that WD Energy has failed to meet its burden of demonstrating that the disputed subpoenaed documents were created for the purpose of settlement discussions and therefore would merit protection under any federal settlement privilege that the court might recognize.  We therefore do not reach the merits of the district court's ruling that no federal settlement privilege exists under FED. R. EVID. 501.  That question remains open in this circuit.