# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 13, 2022

Lyle W. Cayce
Clerk

No. 21-10776

Banca Pueyo SA; Banco BIC Portugues SA; Banco Bilbao
Vizcaya Argentaria SA; BlackRock, Incorporated;
Carlson Capital, L.P.; CQS (UK), L.L.P.; DNCA Finance;
Pacific Investment Management Company, L.L.C.;
River Birch Capital, L.L.C.; TwentyFour Asset
Management, L.L.P.; VR-Bank RheinSieg eG;
Weiss Multi-Strategy Advisers, L.L.C.; York Capital
Management Global Advisors,

*Plaintiffs—Appellees*,

*versus*

Lone Star Fund IX (US), L.P.; Lone Star Global
Acquisitions, L.L.C.; Hudson Advisors, L.P.,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-MC-100

Before Jones, Stewart, and Duncan, *Circuit Judges*.
Edith H. Jones, *Circuit Judge*:

The principal issue in this appeal of a 28 U.S.C. § 1782(a) discovery order is whether, in response to the *ex parte* order authorizing discovery by "interested parties" for use in foreign litigation, the respondents have a right

to challenge the order's validity pursuant to statutory requirements and the Supreme Court's "*Intel* factors." *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 124 S. Ct. 2466 (2004). The district court here misconstrued our precedent and erroneously rebuffed respondents' challenge on its face.

Accordingly, we must REVERSE and REMAND.

## I. Background

In 2014, the second largest Portuguese bank, Banco Espírito Santo ("BES"), reported losses over €3.5 billion. The Bank of Portugal, Portugal's central bank, attempted to salvage BES by incorporating a new bank, Novo Banco, and transferring BES's assets and liabilities to it. The Bank of Portugal next tried to sell Novo Banco to investors, but was unsuccessful.

To better market Novo Banco, the Bank of Portugal retransferred a large amount of Novo Banco's liabilities back to the insolvent BES. This retransfer included approximately €2.2 billion worth of debt on senior notes held by various investors, including some of the appellees. Following the retransfer, and likely as a result of it, those notes became worthless.

After the retransfer, Novo Banco was again posted for sale. Nani Holdings, SGPS, S.A., then purchased a 75% stake. Appellant Lone Star Fund IX owns 14% of Nani Holdings and thus indirectly owns about 11% of Novo Banco.[1] The remaining 25% of Novo Banco stayed in the hands of a Portuguese government-run financial fund ("Resolution Fund").

The debt transfers and Nani Holdings' acquisition of Novo Banco spawned two sets of civil litigation in the Lisbon Administrative Court. In the first set of proceedings, the "Retransfer Litigation," eight plaintiff

---

[1] Lone Star Global Acquisitions, L.L.C., and Hudson Advisors, L.P., had an advisory role in Novo Banco's acquisition, but otherwise were uninvolved.

appellees[2] challenge the retransfer of bonds to BES. Discovery disputes are ongoing in the Retransfer Litigation concerning many of the same documents sought in this § 1782(a) matter. Only appellee DNCA Finance is also a plaintiff in the second set of civil cases, the "Acquisition Litigation," which challenges Nani Holdings' acquisition of Novo Banco after the bond retransfer. The Bank of Portugal has produced discovery in the Acquisition Litigation, but discovery disputes remain pending over claims of trade secrets and confidential information.

Asserting that the appellants possess evidence relevant to the foreign proceedings, the appellees filed an *ex parte* § 1782(a) application, supported by a Portuguese lawyer's affidavit and other papers, in the Northern District of Texas in late December 2018. The district court granted the application with a brief and conclusory opinion (the "*Ex Parte* Order") that commenced by stating "[t]he following recitation of facts … does not constitute fact-finding by this Court."

Upon receiving the subpoenas for documents and testimony, the appellants moved to quash and for reconsideration on the basis that the appellees failed to carry their burden under the statute and the *Intel* factors to obtain § 1782(a) discovery. In a November 2019 Order, the magistrate judge declared that the appellants could not challenge whether the subpoenas were supported under § 1782(a) or the *Intel* factors. Instead, relying on its interpretation of *Texas Keystone, Inc. v. Prime Natural Resources, Inc.,* 694 F.3d 548, 554 (5th Cir. 2012), the magistrate judge stated that "the proper mechanism for challenging the [Ex Parte] Order . . . [wa]s a motion to quash

---

[2] Banca Pueyo S.A., Banco BIC Portugues S.A., Banco Bilbao Vizcaya Argentaria, S.A., DNCA Finance, Pacific Investment Management Company LLC, TwentyFour Asset Management LLP, VR-Bank Rhein-Sieg eG, and Weiss MultiStrategy Advisers LLC are plaintiffs in the Retransfer Actions.

under [Federal Rule of Civil Procedure] 45." Consequently, the appellants would bear the burden to demonstrate their right to relief from the subpoenas. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Appellants were then permitted to "file a renewed motion to quash under Rule 45 addressing their remaining, specific objections."[3] The magistrate judge did, however, consider appellants' several arguments why the discovery application failed to comply with § 1782(a)'s statutory requirements. But the court dismissed their challenge to the *Intel* factors, reasoning that those factors are discretionary and had been weighed by the district court already.

The appellants filed objections to the November 2019 Order, but the district court overruled their objections and expressly refused to consider their arguments and evidence challenging its original statutory and *Intel* factor analysis. ("December 2019 Order"). Like the magistrate judge, the district court claimed *Texas Keystone* as support for rejecting adversary consideration of the § 1782(a) application. The district court stated, "[t]he Court finds that *Texas Keystone* supports its conclusion that once it made the threshold decision that Petitioners met the statutory requirements under Sec. 1782 and that the *Intel* factors weighed in favor of granting Petitioners' Application, the Federal Rules of Civil Procedure govern the discovery dispute at issue." The district court expressly disregarded the "non-binding" decisions of other courts that had allowed reconsideration of the statutory requirements and *Intel* factors pursuant to a motion to quash.

Following about six more months of wrangling over specific discovery requests, and appellants' premature appeal dismissed by this court for lack

---

[3] Appellants argued under Rule 45(d)(3) that compliance with the subpoenas would be an unnecessary and disproportionate burden. The terms of Rule 45 do not otherwise authorize challenging a discovery order under § 1782(a).

of jurisdiction, the district court issued a final discovery order. *See, e.g., Banco Pueyo et al. v. Lone Star Fund et al.*, 978 F.3d 968, 974 (5th Cir. 2020). Appellants timely appealed and this court stayed discovery.

## II. Standard of Review

In § 1782(a) litigation, this court reviews de novo whether a party satisfied § 1782(a)'s statutory prerequisites, and we review a district court's weighing of the *Intel* factors for abuse of discretion. *See Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 376 (5th Cir. 2010).

## III. Discussion

The decisive issue raised by appellants, among a bevy of difficult issues,[4] is whether the district court's *ex parte* approval of the § 1782(a) application was immune from adversarial testing. We hold that it was not.

A few background comments preface our discussion. Section 1782(a) seeks to facilitate third-party discovery in American district courts, from subjects that reside or are found in the district, in aid of "interested parties" in "foreign proceedings." 28 U.S.C. § 1782(a); *Intel*, 542 U.S. at 246, 124 S. Ct. at 2472. The statute, according to the Court, aims to provide efficient assistance to parties litigating in foreign tribunals and, by example, to encourage foreign assistance in U.S. Courts. *Intel*, 542 U.S. at 252, 124 S. Ct. at 2476. In *Intel,* the Supreme Court resolved some lower court conflicts that had arisen in applying § 1782(a) and in so doing gave a "broad" reading to the statute. *See* 8 Wright, Miller & Marcus, Fed. Prac. & Proc. § 2005.1 (3d ed. 2010). Pertinent here, the Court interpreted the term "interested parties" broadly and held that the material sought in this country

---

[4] Some of the other issues pertinent to the granting of the Sec. 1782(a) application will be noted in the discussion of harmless error below.

need not be discoverable in the foreign jurisdiction. *Id.* at 86-88*; Intel*, 542 U.S. at 256, 259–63, 124 S. Ct. at 2478, 2480–82.[5]

At the same time, however, the Court cautioned that granting these discovery requests is discretionary for the district courts. 542 U.S. at 24, 124 S. Ct. at 2473. This court has provided a shorthand description of the Court's "*Intel* factors," the considerations that should inform the district courts' exercise of discretion, as follows: (i) whether the person from whom discovery is sought is a "participant in the foreign proceeding," such that the person, unlike a nonparticipant, is amenable to discovery in the foreign forum and the discovery may be unobtainable in that forum; (ii) the nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign government or forum to U.S. federal court assistance; (iii) "whether the 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions…."; and (iv) whether the request is "unduly intrusive or burdensome." *Ecuadorian Plaintiffs,* 619 F.3d at 376, n. 3, quoting *Intel,* 542 U.S. at 264-65, 124 S. Ct. at 2482-84.[6] Lower courts have both granted and denied applications for § 1782(a) discovery following *Intel. See* cases cited in 8 WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. § 2005.1, n. 51 (3d ed. 2010 and 2022 Supp.).

We agree that it is not unusual for § 1782(a) applications to be made initially on an *ex parte* basis to the district courts, though this does not seem to be routine practice. There is no reason to disapprove *ex parte* applications.

---

[5] Section 1782(a) itself specifies, however, that it shields from discovery materials that are subject to legally applicable privilege claims in the foreign jurisdiction. 28 U.S.C. § 1782(a).

[6] Judge Posner correctly observed that "[t]he section 1782 screen—the judicial inquiry that the statute requires—is designed for preventing abuses of the right to conduct discovery in a federal district court for use in a foreign court." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011).

The procedural device used should not, however, narrow a respondent's legal rights on receipt of a § 1782(a) subpoena. Yet that is what the district court's decision effected here.[7]

Erroneously interpreting *Texas Keystone*, the district court concluded that after its *ex parte* approval of the appellees' discovery requests, the appellants' only permissible response was a "motion to quash" under Rule 45. The court relied on snippets from *Texas Keystone*, including the quotation that "with objections based on the fact that discovery is being sought for use in a foreign court being cleared away, section 1782 drops out." *Texas Keystone, Inc.*, 694 F.3d at 556 (*quoting Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011)). *Texas Keystone* pointed to another quotation stating that the Supreme Court in *Intel* established a threshold standard for access to federal courts' discovery tools, but how discovery proceeds "will be determined by normal discovery rules." *See Texas Keystone*, 694 F.3d at 554 (quoting *Govt. of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 343 (8th Cir. 2012)); *Heraeus Kulzer*, 633 F.3d at 597. Nothing in these general statements countenances the district court's refusal to allow full adversary testing, when sought, of the assertions and evidence that resulted in the court's approval of § 1782(a) discovery.

For several reasons, *Texas Keystone* cannot be read either for the proposition that adversarial testing may be precluded on the merits of a § 1782(a) application following an *ex parte* ruling, or that Rule 45 furnishes the only means to challenge the initiation of the subpoenas approved *ex parte* by the district court. To begin, *Texas Keystone* was appealed by the *proponent* of discovery after the court had granted the respondent's *ex parte* motion to quash. Far from approving the court's peremptory ruling, this court reversed

---

[7] Here and below, the decisions of "the district court" include for convenience the rulings of the magistrate judge.

and remanded to give the discovery applicant, Texas Keystone, an opportunity to respond to the motion. *Id.* at 554. The *ex parte* ruling was held an abuse of discretion. *Id.* Second, no issue about the propriety of discovery under § 1782(a)'s statutory criteria or the *Intel* factors was raised, hence, nothing in *Texas Keystone* specifies, much less limits, the procedures for an initial grant or denial of discovery. The only disputed issue was the scope of the discovery order under the Federal Rules. Third, *Texas Keystone* cites with approval this court's decision in *Ecuadorian Plaintiffs,* in which the district court plainly predicated its § 1782(a) ruling on adversarial filings by the discovery applicant and the intervenors. *Texas Keystone,* 694 F.3d at 553, n.2; *Ecuadorian Plaintiffs,* 619 F.3d at 376. Finally, the district court here read far too much into some courts' description that, after a determination has been made to approve a § 1782(a) application based on statutory criteria and the *Intel* factors, that inquiry "drops out" and the scope of discovery is then adjudged under federal discovery rules. "Drops out" does not prohibit further testing of the application's compliance with § 1782(a), especially to provide balance to an *ex parte* order; it means that the next stage of proceedings, after full resolution of the statutory basis for discovery, occurs under the Federal Rules for discovery's scope.

Pretermitting a full adversary response to the propriety of the § 1782(a) application actually runs afoul of *Intel,* which admonished district courts to "*ensure an airing* adequate to determine what, if any, assistance is appropriate." *Intel,* 542 U.S. at 266, 124 S. Ct. at 2484 (emphasis added). Appellees have cited no circuit court decision in which a district court refused, like the court here, to consider or reconsider a respondent's challenge to the merits of the initial § 1782(a) application. And other circuits' rulings reflect that district courts adjudicated these issues after presentations by both parties. *See, e.g., In re Schlich,* 893 F.3d 40, 50 (1st Cir. 2018) ("Both parties are free to argue their positions, and submit evidence in

support thereof, and the district court is then to consider all of that in weighing [the *Intel* factors"); *In re Accent Delight Int'l. Ltd.,* 869 F.3d 121, 136 (2d Cir. 2017) (the crucible of the adversary process is a great aid to courts in "weed[ing] out abusive Section 1782 applications"); *Government of Ghana,* 677 F.3d at 342 (reconsideration of § 1782(a) application denied by the district court). In light of the district court's misinterpretation of *Texas Keystone,* such decisions are highly persuasive.

Appellants' attempt to shore up the district court's explanation of *Texas Keystone* fails on other grounds as well. First, this dispute is not comparable to a third-party discovery order in U.S. domestic litigation, where the order would be determined from the outset under Federal Rules 26 and 45. The federal court has access to and full comprehension of the scope of discovery requests in domestic cases brought under domestic law, whereas the legal background to foreign disputes is, well, foreign to a United States judge. That is why Congress crafted § 1782(a) with different principles in mind than a rote requirement of applying the Federal Rules alone. Even more important, to forbid a respondent's request for reconsideration of the merits after an *ex parte* § 1782(a) discovery order, while affording a respondent duly noticed about the same application a full arsenal of legal arguments, is an unfair and arbitrary result. The district court's refusal to reconsider invites gamesmanship and even more *ex parte* applications for discovery.

Appellants additionally suggest that the appellees did not suffer prejudice, and any error in the court's refusal to reconsider the merits of the § 1782(a) application was harmless because, in the end, *Intel's* undue burden factor is not really different from the Rule 45(d)(3) undue burden defense to a subpoena. On the contrary, as appellees themselves argued, the courts have differentiated the factors pertaining to initial approval of a § 1782(a) order from the discovery rules governing the order's enforcement. Aside from this implicit indication of a disparity, it is important to recall that the burden of

proof on a motion to quash rests with the respondent, while to obtain § 1782(a) discovery, the applicant must either carry its burden or at least provide sufficient support to persuade the court.[8]  And finally, what is undue or burdensome in the context of the transnational litigation factors expressed in *Intel* is not necessarily identical to the burden and oppression standards that may limit third-party domestic discovery.  *See Texas Keystone*, 694 F.3d at 556 (the threshold standard for § 1782(a) "requires a different analysis" from a motion to quash under the Federal Rules of Civil Procedure).

The argument for harmlessness is further unconvincing in the face of the appellants' challenges to the district court's Section 1782(a) analysis. For instance, appellants' complaint that the appellee parties to one of the civil Lisbon proceedings are not "interested parties" to the other one, as explained above, clearly implies that discovery pertinent to one of the proceedings should not be indiscriminately doled out to the parties to the other proceeding. *Intel,* to be sure, expanded the definition of "interested parties" beyond plaintiffs/defendants in a particular proceeding, but it did not countenance promiscuous availability of discovery to those with no interest in a particular proceeding.  Pertinent to the second *Intel* factor, whether Portuguese courts would be amenable to U.S.-obtained discovery, appellants offered an expert affidavit contrary to that on which the district court predicated its approval of discovery—but the court never took that into consideration.  Pertinent to the other *Intel* factors, appellants showed that the discovery requests before the district court largely overlap requests made, but subjected to redactions and objections, in the Portuguese courts.  Not

---

[8] As the First Circuit explained in *Schlich*, "[t]he Supreme Court has not established the appropriate burden of proof, if any, for any of the discretionary factors, or the legal standard required to meet that burden."  893 F.3d at 49.  Different courts have taken different positions on this question. *Id.*  We take no position on these burden of proof questions at this time.

only that, but those requests are often for documents in the possession of Portuguese defendants *who created the documents at issue.* These uncontested facts suggest the possibility that (a) some of the sought discovery is accessible currently in the foreign courts; (b) appellees' object here is to obtain unredacted copies of that which may be protected by law in the Portuguese proceedings; and (c) therefore, the requests in many aspects pose an undue burden on the appellants. We do not express an opinion on these points, but note that they were never thoroughly vetted in the district court because of the court's refusal to reconsider the *Intel* factors and the truncated discussion of "interested parties" under Section 1728(a).

In the end, "[o]ur entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439, 94 S. Ct. 1113, 1124 (1974). By refusing to consider the appellants' arguments and evidence challenging whether the appellees satisfied the statutory criteria and the *Intel* factors to obtain § 1782(a) discovery, the district court misapplied the law and abused its discretion. *See Sandsend*, 878 F.2d at 881; *Texas Keystone,* 694 F.3d at 555.

## IV. Conclusion

Accordingly, the judgment of the district court is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.